IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| THE UNITED STATES OF AMERICA ON BEHALF AND USE OF GERMAN ALDAS HERMANS TOUCH | * |
| Plaintiff | * |
| v. | *   Civil Court Action No:    1:05CV01351 |
| DALCO INCORPORATED OF ARIZONA, ET AL. | * |
| Defendants | * |

\* \* \* \* \* \* \* \* \* \* \*

**DEFENDANTS' REPLY MEMORANDUM TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO SUMMARY JUDGMENT**

Defendants Dalco Incorporated of Arizona ("Dalco") and Safeco Insurance Company of America ("Safeco") (collectively, the "Defendants"), by their undersigned counsel, hereby submit this Reply Memorandum to Plaintiff's Memorandum in Opposition to Summary Judgment. In support they state as follows:

**FACTS**

Dalco Incorporated of Arizona ("Dalco") was the general contractor on a project known as the D.C. Superior Courts Building (the "Courthouse") B- Interior Improvements (the "Project"). As required by 40 U.S.C. §§ 1331 - 1334 (2005) also known as the Federal Miller Act (the "Act"), Dalco posted a payment bond, no. 9000-0045 (the "Bond"), in the amount of Ten Million, Three Hundred Eighty-Four Thousand Dollars ($10,384,000.00) for the Project. The Bond was issued by Safeco, as surety, and

Dalco, as principal, on behalf of the United States of America, through the General Services Administration ("GSA"), as obligee. The Project consisted of renovations to two (2) floors of Building B of the D.C. Superior Courthouse. Tingey Construction Company ("Tingey") was technically a subcontractor on the Project but provided many of the services of a general contractor, such as management authority, labor relations, hiring of subcontractors and negotiations on behalf of Dalco. The other subcontractors took their assignments, negotiated change orders and reported directly to representatives of Tingey[1].

Plaintiff, The United States of America on Behalf and Use of German Aldas, trading as Hermans Touch ("German Aldas") was a subcontractor for the Project. The Subcontract was in the amount of Two Hundred and Thirty Thousand Dollars ($230,000.00). On June 30, 2005, Plaintiff filed a Complaint (the "Complaint") pursuant to the Act and one claim of breach of contract. Plaintiff alleged that he was owed an additional One Hundred and Thirteen Thousand, Four Hundred and Sixty-Eight Dollars ($113,468.00) for additional services he was asked to perform while working on the Project. A claim pursuant to the Act must be brought "no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action" 40 U.S.C. §3133(b)(4). Since Plaintiff filed his lawsuit on June 30, 2005, he must prove that he was working pursuant to his contractual

---

[1] As the Project progressed, the relationship between Dalco and Tingey broke down and Dalco terminated Tingey from the Project in November 2004. Tingey remained off the Project for a few months. During that time, Dalco took over all of the responsibilities that Tingey previously held. By spring 2004, Tingey was reinstated with its authority on the Project.

obligations for the Project on June 30, 2004 or anytime thereafter.  In his Complaint, Plaintiff claimed that he was last working on the Project on July 12, 2004, performing punch-list items.

## STANDARD

Summary judgment is appropriate where the pleadings, depositions, and answers to interrogatories show that there is no genuine issue as to a material fact and that the moving party is entitled to judgment as a matter of law.  Nader v. de Toledano, 408 A.2d 31 (D.C. 1979); Fed. R. Civ. P. 56(c).  The non-moving party must establish the existence of a dispute of material fact with more than a scintilla of evidence, and must adduce evidence from which the jury could reasonably find in its favor. Bemberry v. Dist. of Columbia, 852 A.2d 938 (D.C. 2004); Brown v. Consol. Rail Corp. 717 A.2d 309, 311 (D.C. 1998).  The non-moving party's *conclusory* allegations are not sufficient to defeat the entry of summary judgment. Beard v. Goodyear Tire and Rubber Co., 587 A.2d 195, 198 (D.C. 1991) (emphasis added).  To defeat summary judgment, Plaintiff must produce evidence on which a jury might rely, and the admission of "factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A plaintiff who has not made a sufficient showing should not be allowed to require a defendant to "undergo the considerable expense of preparing for and participating in a trial."  *See* Catrett, 477 U.S. at 323-24.

**ARGUMENT**

I. <u>Plaintiff's Opposition Motion for Summary Judgment Utilizes Documentation that Violates this Court's Order of November 7, 2006.</u>

This Court issued an Order (the "Order") on November 7, 2005. That Order provided, "Plaintiff and defendant Safeco will have until not later than January 15, 2006 to explore the statute of limitations issue identified in their joint Rule 16.3 report, and to conduct any requisite discovery related to that issue." (Order, ¶ 1). A true and accurate copy of this Court's Order is attached hereto as **Exhibit A**. Defendants contend that the Plaintiff was not on the Project on June 30, 2005 or thereafter, as required by the Act, and that is why the Court granted the parties time for discovery on this preliminary issue. The Court further ordered a status conference to be held on January 27, 2006 at 9 am. Per the Court's Order, the Defendants had completed their discovery on the statute of limitations issue by January 15, 2006 and filed its Motion for Summary Judgment (the "Motion") shortly thereafter. The Defendants' Motion pertains only to Plaintiff's claims under the Act.

It was only after the discovery deadline, and after the Defendants filed for summary judgment, that the Plaintiff discovered documentation he claims to support his assertions that he was on the Project after June 30, 2005. In his Motion in Opposition to Defendant's Motion for Summary Judgment (the "Opposition Motion"), Plaintiff claims his ex-wife packed his documents in boxes and that some of the boxes were not labeled correctly or not labeled at all. It was not until after the Defendants filed for

summary judgment that the Plaintiff decided to go through these boxes and discovered the documents attached to his Opposition Motion as **Exhibits C, D**, and **F**.

Defendants propounded a Request for Production of Documents and a set of Interrogatories on the Plaintiff on August 31, 2006. In response, Defendants received what the Plaintiff represented to be his entire file related to the Project. The lack of evidence and documentation produced by Plaintiff to support his One Hundred Thirteen Thousand, Four Hundred and Sixty-Eight Dollar ($113,468.00) claim caused Defendant Safeco to send a letter to Plaintiff's counsel regarding the lack of adequate responses. A true and accurate copy of counsel's letter was attached to Defendants' Motion as **Exhibit F**. Counsel for the Plaintiff verbally indicated that the documents produced in response to Safeco's document request consisted of Plaintiff's entire file. However, as Plaintiff's Opposition Motion reveals, there were additional documents in Plaintiff's possession.

Plaintiff does not state that these 'newly-discovered' documents were out of his possession, custody or control prior to January 15, 2006. He simply states that they were in boxes and he did not choose to look through such boxes prior to the discovery deadline date. Plaintiff had many months to search through his belongings for documents pertaining to his claim. It is only after the Defendants filed for summary judgment did the Plaintiff finally look through his belongings for more evidence of his claims.

The Defendants are substantially prejudiced if this Court allows the Plaintiff to utilize this additional documentation to support his Opposition Motion. Not only has it

been produced in violation of this Court's Order, but the Defendant's propounded a document request months ago and have based their statute of limitations argument on the assumption that Plaintiff's previous document production was complete and accurate. The new documents present an entirely different set of facts than what the Plaintiff originally set forth in his Complaint and previous discovery. By revealing this information now, when discovery on the statute of limitations issued has been closed per Court Order, the Defendants have no time to verify the documents' authenticity or question any of the newly-revealed witnesses.

II.   <u>Plaintiff's Opposition Motion Reveals that Plaintiff's Discovery Responses were False and Misleading.</u>

In addition to the production of additional documents, Plaintiff's Opposition Motion revealed new information that not had been disclosed in any of Plaintiff's discovery responses. This information drastically contradicts his Complaint, his discovery answers and all of his assertions throughout the case thus far.

For example, Defendant Safeco's Interrogatories, dated August 30, 2005, contained the following question and response:

> INTERROGATORY NO. 8:   Identify in detail the last day you supplied any materials, or performed any services for the Project, and *identify any communication, documentation, person, or other means that can support your answer.*
>
> ANSWER:  Plaintiff last did 'punch list' work in the project on July 12, 2004.

(Plaintiff's Answers to Interrogs p. 4) (emphasis added).

Throughout discovery the Plaintiff maintained that his last day on the Project was July 12, 2004.  This assertion was consistent with the Complaint in which the Plaintiff calculated interest to run on his alleged damages from July 12, 2004.  It is only in his Opposition Motion that the Plaintiff suddenly changes his story and claims that he was actually performing extra work on the Project until September 2004.  The Plaintiff gives absolutely no explanation for why he has suddenly changed his story and why he could not give this information to the Defendants prior to the discovery deadline.  It is not even clear if the Plaintiff still maintains that he was performing punch-list work on the Project on July 12, 2004.

Punch-list work is very different from substantive work.  Punch-list work is performed after the contract is substantially complete and usually entails remedial or corrective work such as chipped paint and clean-up.   As the Defendants' cited in their Motion for Summary Judgment, the statute of limitations under the Act will not toll for the completion of these items. *See, e.g.*, United States ex rel. Interstate Mech. Contrs., Inc. v. International Fidelity Insurance Company,  200 F.3d 456  (6th Cir. 2000); United States for the use of Billows Elec. Supply Co. v. E.J.T. Constr. Co., Inc., 517 F. Supp. 1178, 1181 (E.D. Pa.1981), aff'd 688 F.2d 827 (3rd Cir.), cert. denied, 459 U.S. 856 (1982); United States for the use of Magna Masonry, Inc., v. R.T. Woodfield, Inc., 709 F.2d 249, 250 (4th Cir. 1983); United States ex rel. Austin v. Western Elec. Co., 337 F.2d 568, 572 (9th Cir. 1964); United States for the use of State Elec. Supply Co. v. Hesselden Constr. Co., 404 F.2d 774, 776 (10th Cir. 1968).  That means that even if the Plaintiff was performing punch-list work on the Project on July 12, 2004, the statute of limitations for filing suit

under the Act had already begun to run at the time he completed the Project, presumably prior to July 12, 2004. Not only does the Plaintiff now claim he was working well after July 12, 2004, but he claims he was performing extra work, not punch-list work.

Another example of the Plaintiff's misrepresentations during discovery is also in regard to his Answer to Interrogatory No. 8. Plaintiff has produced alleged payroll records containing the names of two employees, Rene Rodriguez and Margarita Cruz, which he claims were working on the Project with him. Interrogatory No. 8, as stated above, requested the name of any person to support his answer that he was performing punch-list work on July 12, 2004. Plaintiff did not mention the names of these two employees, who presumably would have known when he was working on the Project. In fact, this is the *first time* that Plaintiff has revealed that he had employees working on the Project with him. Plaintiff does not reveal any contact information for these people nor does he provide any explanation for why he did not reveal that he had employees who could verify his presence on the Project prior to filing his Opposition Motion.

Plaintiff also revealed the names of other people for the first time in his Opposition Motion who can allegedly support his claim that he was on the Project on July 12, 2004. He has attached an affidavit from Joseph Sanchez, the Chief Administrative Officer and Chief Procurement Officer of the District of Columbia Courts. This is the first time Plaintiff mentions Mr. Sanchez as a person who can support his claims. He also mentions the name of Mohammed Jallow. Again, this is a person Plaintiff had never mentioned before. These people can allegedly verify his

presence on the Project and were responsive to Defendants' discovery requests but Plaintiff chose not to reveal them until now.

### III. Plaintiff's Affidavit

Even if this Court decides that is will allow Plaintiff to present his additional documentation and assertions in violation of this Court's Order and discovery, Plaintiff's affidavit is full of conclusory allegations and self-serving statements that are insufficient to overcome a motion for summary judgment. Plaintiff had always maintained that his last day on the Project was July 12, 2004, when he was performing punch-list work. This assertion was made twice, *under oath*, in the Complaint and in Plaintiff's answers to interrogatories. However, Plaintiff now swears in his affidavit that he was actually on the Project until September 12, 2004, performing extra work.

In his affidavit the Plaintiff also states several times "I was instructed …," prior to listing work that he was allegedly 'instructed' to perform. (See Aldas Aff. ¶ 11 through 15). However, Plaintiff never reveals who he was instructed by. For example, Plaintiff states,

> 12. I was instructed to purchase grommets to install on custom window frames I had been told to build.

(Aldas Aff. ¶12).

In addition to not stating who instructed the Plaintiff to allegedly perform this work, building custom window frames was not in the Plaintiff's contract with Dalco. A true and accurate copy of the Plaintiff's subcontract with Dalco was attached to

Defendant's Motion as **Exhibit A**. If Plaintiff was instructed to do work by someone other than Dalco or its representatives, then that work was not part of his contract with Dalco and not part of the Project.

Plaintiff also makes assertions in his affidavit that contradict the documents he attached as Exhibits. Plaintiff states in his affidavit,

> 11. I was instructed to touch up the doors, frames and wood panels I had installed and which had been damaged by other subcontractors and/or by the building's occupants. From July 14, 2004 through July 22, 2004, my staff and/or performed this work. This work took approximately ten (10) hours to complete…

(Aldas Aff. ¶11).

Attached to Plaintiff's Opposition Motion as **Exhibit E** are the Plaintiff's alleged weekly payroll records for the Project. According to that exhibit, Plaintiff's staff worked thirty-four (34) to forty (40) hours a week, plus some overtime, for the entire month of July. Plaintiff stated in his affidavit that the extra work only took him and his staff ten (10) hours to complete, so there is a discrepancy in what Plaintiff asserts in his affidavit and the documents he has produced to support his Opposition Motion. Plaintiff also asserts that the extra work he and his staff performed on the Project was completed after hours and on weekends. (Aldas Aff. ¶10). However, the alleged payroll records show both employees consistently working thirty-four (34) to forty (40) hours per week. It is very hard to work a forty (40) hour week, plus overtime, on nights and weekends alone.

Plaintiff makes other inconsistent assertions with regards to his alleged payroll records. His affidavit states:

16.  Attached as Exhibit E are true and accurate copies of my weekly payroll records for the period June 11, 2004 through October 23, 2004 (those after September 12, 2004 do not refer to work done on the Project).

(Aldas Aff. ¶16).

The Plaintiff does not affirmatively swear that the records from June 11, 2004 through September 12, 2004 represent work performed for the Project. There is no differentiating mark to distinguish the payrolls prior to September 12, 2004 from the payrolls after September 12, 2004. *All* of the payrolls, except for June 2004, state the location as "DC S Court." The employees are the same, the pay-rate is the same, and the hours are generally consistent from June until October. The Plaintiff does not explain why all the payrolls are the same and why the October payroll says, "DC S Court," if he does not claim he was working on the Project at that time. It would suggest that the Plaintiff was working at the Courthouse for some other entity and not pursuant to his contractual obligations to Dalco.

IV.  <u>The Affidavits from Mohsen Grayeli and Joseph Sanchez</u>

Plaintiff has presented to this Court two affidavits from alleged eye-witnesses who have sworn that they saw him "on the Project." Mohsen Grayeli states in his affidavit:

"I personally witnessed German Aldas or his employees working on the Project during the month of July, 2004. Among other jobs I witnesses him doing during the

month of July, 2004 was striping and refinishing of the window moldings, the removal of hundreds of existing grommets and his installation of hundreds of new and different grommets on the window trims."
(Grayeli Aff. ¶4).

The subcontract Plaintiff had with Dalco for the Project, attached to Defendant's Motion as **Exhibit A**, does not include windows in Plaintiff's scope of work. Striping of windows and refinishing of the window moldings, the removal of hundreds of existing grommets and installation of hundreds of new and different grommets on the window trims never appeared anywhere on the punch-list for the Project attached as **Exhibit J** to Defendant's Motion.

Mr. Grayeli was not privy to the contract between Dalco and the Plaintiff. He does not state whether Plaintiff was performing work pursuant to his contractual obligations to Dalco and the Project, or to some other entity. If Mr. Grayeli saw the Plaintiff at the Courthouse performing work on the windows, then the work was not being performed pursuant to the Project.

The affidavit of Joseph Sanchez, whose name was not disclosed prior to Plaintiff's Opposition Motion, states:

4.  I recall seeing German Aldas performing work on the Project during the period from 7/14/04 through 9/12/04 which is set forth on the attached Exhibit A.

5.  I have reviewed the attached Exhibit A detailing the work performed by German Aldas during the period of 7/14/04 thru 9/12/04 and find it to be true and correct.
(Sanchez Aff. ¶4-5)

Attached as Plaintiff's **Exhibit A** are some alleged change orders produced by the Plaintiff. (These change orders were presented to the Defendants prior to the discovery deadline and the Defendants attached them to their Motion as **Exhibit C**.) The date of the change orders is June 30, 2003, and there is no authorized signature. The only handwriting that appears on the alleged change orders is that of the Plaintiff. **Exhibit A** does not set forth that the Plaintiff was performing work on the Project from 7/14/04 through 9/12/04, as stated by Mr. Sanchez in his affidavit. Mr. Sanchez's statements are based on a document that does not say what he presumes it to say. His statement that the work performed by Plaintiff as evidenced by **Exhibit A** is true and correct does not mean that the Plaintiff was performing that work pursuant to his contractual obligations on the Project. If Mr. Sanchez saw the Plaintiff at the Courthouse performing work on the windows, the work was not being performed pursuant to the Project.

## CONCLUSION

Plaintiff has violated this Court's Order and prejudiced the Defendants by failing to produce documentation requested by the Defendants in their discovery requests. The documents were in Plaintiff's possession, custody and control since the inception of this case but he did not look for them until after the Defendants' filed for summary judgment and after this Court's mandated discovery deadline had passed. He has also made brand-new assertions regarding the last day he worked on the Project that contradict all of his prior discovery responses.  For this reason, the documents

produced after the discovery deadline and the new allegations asserted for the first time in Plaintiff's Opposition Motion should be disregarded.

The Plaintiff also produced the affidavit of a person, Joseph Sanchez, whom he did not reveal as a person with discoverable information regarding the date he last worked on the Project as requested in Defendant Safeco's interrogatories. For this reason, the affidavit of Mr., Sanchez should be disregarded.

If this Court decides to allow Plaintiff to present his new evidence in violation of its Order, the Plaintiff has still not produced any evidence to present a genuine issue of material fact to prevent this Court from entering summary judgment. The Plaintiff's own affidavit is full of assertions that contradict other parts of his Motion. It is also irreconcilable with his other statements under oath, namely the Complaint and his answers to interrogatories. Plaintiff has suddenly changed his story and discovered new documents only after the Defendants filed for summary judgment. For these reasons, the Court should find Plaintiff's Opposition Motion insufficient to defeat Defendants' Motion for Summary Judgment.

WHEREFORE, Defendants Dalco Incorporated of Arizona and Safeco Insurance Company of America respectfully request this Court to GRANT its Motion for Summary Judgment and dismiss this claim with prejudice.

- 15 -

\_\_\_/s/_____
Cynthia Rodgers-Waire (Bar No. 444095)
Robert F. Carney (Bar No. 436999 )
Whiteford, Taylor & Preston L.L.P.
Seven Saint Paul Street
Baltimore, Maryland 21202-1626
(410) 347-8700

Jane Saidon Dudley (Bar No.459595)
Whiteford, Taylor & Preston L.L.P.
1025 Connecticut Avenue, N.W.
Suite 400
Washington, D.C. 20036
(202) 659-6800


Attorneys for Defendants,
DALCO INCORPORATED OF ARIZONA, and SAFECO INSURANCE COMPANY OF AMERICA

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of February, 2006, a copy of the foregoing Motion for Summary Judgment was electronically filed and/or mailed first class, postage prepaid to:

Adam Wilk, Legum & Wilk P.L.C, 4004 Williamsburg Court, Fairfax, VA 22032, Attorney for Plaintiff.

____/s/_____
Cynthia Rodgers-Waire

*1666543*

- 16 -